Slip Op. 07-116

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

————————————————————————— :
SKF USA INC.,                                    :
                                                 :
            Plaintiff,                           :
                                                 :
            v.                                   :
                                                 :
UNITED STATES OF AMERICA,                        :
UNITED STATES CUSTOMS AND BORDER                 :
PROTECTION, ROBERT C. BONNER                     :
(COMMISSIONER, UNITED STATES CUSTOMS             :     Court No. 05-00542
AND BORDER PROTECTION), UNITED STATES            :
INTERNATIONAL TRADE COMMISSION, and              :
STEPHEN KOPLAN (CHAIRMAN, UNITED                 :
STATES INTERNATIONAL TRADE COMMISSION),          :
                                                 :
            Defendants,                          :
                                                 :
            and                                  :
                                                 :
TIMKEN US CORPORATION,                           :
                                                 :
            Defendant-Intervenor.                :
————————————————————————— :


Steptoe & Johnson LLP (Herbert C. Shelley, Alice A. Kipel, Susan R. Gihring and William G. Isasi) for SKF USA Inc., Plaintiff.

Peter D. Keisler, Assistant Attorney General, Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (David S. Silverbrand); of counsel: Charles Steuart, United States Bureau of Customs and Border Protection, for the United States, Defendant.

James M. Lyons, General Counsel, Neal J. Reynolds, Assistant General Counsel, Office of the General Counsel, Unites States International Trade Commission (David A.J. Goldfine) for the United States International Trade Commission and Stephen Koplan, Chairman, Defendant.

Stewart and Stewart (Terence P. Stewart, Amy S. Dwyer and J. Daniel Stirk), for Timken US Corporation, Defendant-Intervenor.

Dated: July 26, 2007


## OPINION

### I.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i) (2000).


### II.  Standard of Review

As set out in the Administrative Procedure Act ("APA")[1] this Court "will set aside Customs' denial of offset distribution only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  Dixon Ticonderoga Co. v. United States, 486 F.3d 1353, 1354 (Fed. Cir. 2006)(quoting Candle Corp. of America v. U.S. Int'l Trade Comm'n, 374 F.3d 1087, 1091 (Fed. Cir. 2004)(citing 5 U.S.C. § 706 (2000))).


### III. Background

On September 12, 2006, this Court issued an order directing the United States International Trade Commission ("ITC" or

---

[1]     The provisions of subchapter II and chapter seven of title five of the United States Code were originally enacted on June 11, 1946, and are popularly known as the Administrative Procedure Act.  It has been amended since.  See 5 U.S.C. §§ 551-559, 701-706.

"Commission") and the Bureau of Customs and Border Protection

("Customs")[2], to "re-examine their decision to deny SKF [Continued

Dumping and Subsidy Offset Act of 2000] disbursements for the 2005

fiscal year in accordance with" this Court's decision in SKF USA

Inc. v. United States ("SKF USA"), ___ CIT ___, 451 F. Supp. 2d

1355 (2006).   On December 8, 2006, Customs filed its remand

determination.   See Reconsideration of the Fiscal Year 2005 CDSOA

Certification of SKF USA, Inc.   ("Customs' Reconsideration"),

December 8, 2006.[3]   On December 11, 2006, the ITC filed its remand

determination.   See Letter from Patrick V. Gallagher, Jr., ITC, to

the Honorable Tina Potuto Kimble, Clerk of the Court (Dec. 11,

2006) ("ITC Remand Determination").   On January 10, 2007, SKF USA

Inc. ("SKF" or "Plaintiff") and Defendant-Intervenor, Timken U.S.

Corp. ("Timken") filed their comments upon the remand results.   See

Pl.'s Comments on Remand Determinations Issued By Def. United

States Customs and Border Protection and Defendant United States

---

[2]      The Bureau of Customs and Border Protection was renamed
United States Customs and Border Protection, effective March 31,
2007.   See Name Change From the Bureau of Immigration and Customs
Enforcement to U.S. Immigration and Customs Enforcement, and the
Bureau of Customs and Border Protection to U.S. Customs and Border
Protection, 72 Fed. Reg. 20,131 (April 23, 2007).

[3]      Though the ITC issued its remand in the form of a letter
to the Honorable Tina Potuto Kimble, Clerk of the Court, CIT, on
December 11, 2006, the ITC did previously advise Customs of the
results.   See Custom's Remand Determination at 1 ("The ITC has
informed [Customs] that SKF has been added to its list of potential
affected producers for Bearings from Japan . . . for fiscal year
2005.").

International Trade Commission ("SKF Comm.") at 10; Defendant-Intervenor's Comments on the Remand Results ("Timken Comm.") at 4.

In its remand, the ITC determined that SKF "did participate in the original investigation by questionnaire response and the company is eligible, using the definitions announced in [SKF USA], to be placed on the list prepared by the [ITC] under the Byrd Amendment for the order covering ball bearings from Japan." ITC Remand Determination at 2.  As such, the ITC "revised the Byrd Amendment list for the antidumping duty order on ball bearings from Japan to include" SKF.  Id. at 2.

In its remand, Customs stated:

In its July 13, 2005, certification, SKF sought a disbursement in the amount of its total qualifying expenditures, $115,033,000.00.    Including SKF's certification, the total qualifying expenditures submitted by affected domestic producers for Commerce Case No. A-588-804[4] would have been $3,873,340,322.67. A total of $47,810,802.17 was available for distribution to affected domestic producers in this Commerce Case.  In accordance with 19 U.S.C. § 1675c(d)(3) and 19 C.F.R. § 159.64(c)(2), affected domestic producers would only be entitled to receive a pro rata share of the available

---

[4]    Commerce determined that there were sales at less-than-fair value resulting in an antidumping duty order.  See Antidumping Duty Orders for Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof From Japan, Inv. No. A-588-804, 54 Fed. Reg. 20,904 (Dep't Commerce May 15, 1989). Following the enactment of the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), the ITC provided Customs with a list of entities (i.e. manufacturer, producer, farmer, rancher, or worker representative) eligible as "affected domestic producers," on which SKF was not originally included.  See SKF USA, ___ CIT at __, 451 F. Supp. 2d at 1358.

funds because the total qualifying expenditures certified exceeds the amount available for distribution.  SKF's certified qualifying expenditures represent 2.9699% of the total qualifying expenditures for this Commerce Case No. A-588-804.

If, after all opportunities for rehearing and/or appeal have been exhausted, [SKF USA] is the final court decision upon this action, SKF would receive a distribution for up to $1,419,933.01 in CDSOA funds for fiscal year 2005, to the extent these funds are either recoverable from the affected domestic producers who initially received them or are available . . ..

Custom's Remand Determination at 1-2.

On January 10, 2007, SKF filed comments to both the ITC Remand Determination and Customs' Reconsideration with this Court.  See SKF Comm. at 10.  Comments were also submitted by Timken on the same day.  See Timken Comm. at 4.  Rebuttal comments were submitted by the ITC, Customs and Timken on January 30, 2007.  See Def. U.S. International Trade Commission's Response to Pl.'s Comments on the Commission's Remand Determination ("ITC's Reb.") at 1-9; Response to Comments Upon Remand Results ("Customs' Reb.") at 16; Rebuttal Comments of Timken US Corporation to SKF USA's Comments on the Remand Results ("Timken's Reb.") at 15.

## IV.  Discussion

### A.  Contentions of the Parties

#### 1.  SKF's Contentions

SKF agreed with the final results of both Customs' Reconsideration and the ITC Remand Determination (collectively, the

"Remand Determinations") to the extent that both Customs and the ITC (collectively, the "Defendants") now find that SKF is eligible to be placed on the list of "affected domestic producers" and is as such eligible to receive distributions under 19 U.S.C. § 1675c. See Pl.'s Comm. at 2.   SKF, however, objects to the ITC having "only revised the CDSOA 'affected domestic producer' list to include [SKF] for the antidumping duty order on ball bearings from Japan." Id. at 3.

SKF stresses that "the investigation in which the [ITC] noted that [SKF] participated was not limited to Japan, but covered ball bearings from nine countries." Id. at 3.   SKF further contends that this Court's decision in SKF "with regard to the ITC was limited only as to fiscal year 2005.   It was not limited as to country." Id. at 4.   Furthermore, SKF contends that a determination that SKF is eligible for disbursements under all outstanding ball bearing orders would be consistent with SKF's last request for relief, which requested that this Court:

> issue an order severing from the antidumping law, those provisions of 19 U.S.C. 1675c . . . that limit eligibility for disbursements to only those domestic producers that support antidumping petitions and declaring those provisions unconstitutional, null and void, and issue an order declaring that [SKF] is entitled to be considered for distribution of a proportionate share of CDSOA disbursements for fiscal year 2005.

Id. at 5 (citing to Am. Complaint at 17, ¶ 4).

SKF further argues that as Customs relied solely on SKF's July 13, 2005 certification, Customs thereby failed to consider the amended certification for Japan, as well as other certifications. See id. at 6.  SKF specifically raises Customs' refusal to consider an amended certification for disbursements under the antidumping order against ball bearings from Japan, as well as certifications for seven other countries, which SKF filed with Customs on September 28, 2006.  Id. at 6.  SKF contends that this "refusal to use the amended certification to calculate [SKF's] proportional share of disbursements is unsupportable."  Id. at 6.

### 2.   ITC's Contentions

The ITC contends that when "SKF filed its appeal in October 2005, [SKF] made clear that it was challenging only the two agency's actions relating to its requests for Byrd Amendment distributions for the Japanese order."  ITC Reb. at 2; (citing to Complaint, ¶¶ 7, 15).  The ITC stresses that SKF's claim "reflects a not particularly subtle attempt to broaden the scope of [SKF's] appeal and the nature of the Court's decision on this matter."  Id. at 4.

The ITC stresses that the scope of the Court's review in the case at bar "'is confined to the record developed before the agency[.]'"  Id. at 5 (citing to Ammex, Inc. v. United States, __

CIT __, 341 F. Supp.2d 1308, 1311 (2004)).  Thus, the ITC argues, "the decisions subject to this appeal are <u>only</u> the [ITC's] and Customs' denial of [SKF's] requests to be declared eligible for Byrd distributions relating to the Japanese ball bearings order for fiscal year 2005." <u>Id.</u> at 5.  The ITC further stresses that "at no point in [the] administrative process did [SKF] even suggest that the [ITC] or Customs had been mistaken in interpreting their requests as relating only to the Japanese ball bearings order." <u>Id.</u> at 6.  Additionally, the ITC argues that SKF had previously made it clear that it was its intent to challenge the actions of Customs and the ITC in denying its request under the Japanese ball bearing order, and that SKF only challenged the actions of the Defendants in connection with the disbursement of funds collected under an antidumping order on ball bearings from Japan.  <u>See</u> <u>id.</u> at 6 (citing to Complaint at ¶ 7).  The ITC concludes by contending that this Court's opinion in <u>SKF USA</u> did not indicate that the ITC or Customs "should go beyond the scope of their underlying determinations and this appeal by making a new set of decisions as to whether [SKF] was entitled to receive Byrd distributions under any order than the order covering Japan." <u>Id.</u> at 7.

### 3.   Timken's Contentions

Timken initially disagreed with the decision in <u>SKF USA</u>, in which this Court declared that the Continued Dumping and Subsidy

Offset Act of 2000 ("CDSOA") violates the Equal Protection Clause. See Timken Br. at 1-2.  Though "Timken disagrees with the Court's conclusions and reserves its right to appeal, Timken believes the determinations of the ITC and [Customs] are consistent with the opinion of the Court[.]"  Timken Br. at 3.  Timken, however, contends that Customs has made a ministerial error by certifying SKF's qualifying expenditures to 2.9699%, thereby entitling SKF to receive $1,419,933.01 of the $47,810,802.17 available for distribution.  See id. at 3.  Timken argues that Customs had previously rounded the allocation percentage to the billionth decimal place, and not the ten thousandth, as is indicated above. See id. (citing to FY 2005 CDSOA Annual Disbursement Report). Timken surmises that SKF's "correct allocation percentage should be 2.969865553% and the distribution [SKF] would potentially receive from the total available, $47,810,802.17, would be up to $1,419,916.54."  Id.

Additionally, Timken contends that SKF's comments on the remand determinations are not responsive to the remand results and should thus be rejected.  See Timken's Reb. at 2.  Timken states that an agency's "determination 'will be upheld as long as the Court can reasonably discern how the agency arrived at the decision' as long as it is 'in accordance with law.'"  Id. at 2; (citing to Cathedral Candle Co. v. United States, 27 CIT __, __,

285 F. Supp.2d 1371, 1375 (2003)).

Timken contends that both Customs and the ITC correctly limited their determinations on remand to the question of SKF eligibility for CDSOA distribution with respect to the antidumping order on ball bearings from Japan alone, as SKF only sought eligibility for and distribution to the antidumping duty order on ball bearings from Japan. Id. at 2-3. Timken asserts that in the case at bar judicial review of agency determinations must be based on all the documents before the agency at the time of determination. See id. at 3. Timken further asserts that the full record of documents used by both Customs and the ITC indicates that SKF "referred only to the Japan ball bearings order in requesting agency action." Id. at 4. As such, Timken assert that both the ITC and Customs remand determinations were consistent with this Court's remand instructions from SKF USA, 30 CIT at __, 451 F. Supp. 2d at 1367. See id. at 6.

Timken further argues that even if SKF's "new certification covering seven additional orders and qualifying expenditures of $8,164,858,000 could have been considered on remand [Customs] would not have been required to accept certifications filed over a year too late on September 28, 2006, contrary to the statutory and regulatory deadlines governing FY2005 certifications and distributions." Id. at 8. Timken stresses that "in order to

receive CDSOA distributions for FY2005, Custom's regulations required eligible affected domestic producers to file certifications . . . by August 1, 2005." Id. at 9 (citing to 19 C.F.R. § 159.63(a); 70 Fed. Reg. 31,566 (June 1, 2005)). Timken concludes by contending that in SKF USA this Court stated that it entrusted Customs to determine how SKF receives its pro rata share of the FY2005 CDSOA disbursements, and Customs' action since the decision have complied with this Court's instructions. See id. at 15 (citing to SKF USA, ___ CIT at __, 451 F. Supp. 2d at 1366).

### 4.   Customs' Contentions

Customs begins its contentions by agreeing with Timken's argument that SKF's CDSOA distribution was miscalculated through a ministerial error. See Customs' Reb. at 3. Customs asserts that it initially erred in calculating the allotted SKF distribution at 2.9699%, as opposed to the proper 2.969865553% allocation. See id. Accordingly, Customs requests that this Court "grant a remand to Customs for the limited purpose of correcting a ministerial error in its calculation of the CDSOA distribution SKF will be entitled to pursuant to [SKF USA], if [SKF USA] remains the final Court decision after all appeals have been exhausted." See id. at 4.

Despite the above request for recalculation, Customs asserts that both Customs and the ITC complied with SKF USA when they issued their remand results. See id. Customs argues that when

reviewing whether Customs' or the ITC's interpretation and
application of the CDSOA are in accordance with law, courts apply
the standard of review set forth in the APA.  See id. at 6.
Customs further argues that in the APA context:

> an action must meet two requirements to be "final"
> pursuant to 5 U.S.C. § 704: (1) " the action must mark
> the 'consummation' of the agency's decision making
> process," Bennet v. Spear, 520 U.S. 154, 177-78 (1997);
> and (2) "the action must be one by which 'rights or
> obligations have been determined,' or from which 'legal
> consequences will flow.'" Id. at 178.  Because SKF only
> challenged the ITC's administrative determination not to
> add SKF to the ADP list with respect to the ball bearings
> from Japan antidumping investigation, the ITC has not
> taken any administrative action with respect to other
> antidumping or countervailing duty orders.  Thus, there
> is no other action which is subject to review because
> neither of the requirements established in the case law
> are met.  See Lujan v. National Wildlife Federation, 497
> U.S. 871, 882 (1990).

Customs' Reb. at 7-8.  Customs asserts that in the case at bar
there can be no "consummation" of the decision making process as
Customs has not yet made a decision upon whether to apply its
overpayment provision and as there is no decision for this Court to
review.  See id. at 14.  Customs asserts that a decision not to
take enforcement action is immune from judicial review pursuant to
5 U.S.C. § 701(a)(2).  See id.

Customs further contends that it complied with this Court's
order in SKF USA, and did not err in neglecting to consider SKF's
September 28, 2006 submission to the ITC in determining SKF's
entitlement to CDSOA distributions as SKF was untimely in filing

the materials.   See id. at 9-11.   Customs asserts that "all CDSOA

certifications were due to be filed within 60 days of Customs' July

3, 2005 publication of Distribution of Continued Dumping and

Subsidy Offset to Affected Domestic Producers, 67 Fed. Reg.

44,722."   Id. at 10-11.   Customs then further asserts that if SKF

believed its certification contained incorrect figures, it had ten

days after Customs issued its July 15, 2005 notification denying

SKF certification within which to correct that certification.   Id.

at 11 (citing to 19 C.F.R. § 159.63(c)).   Based on all the above

arguments, Customs concludes that this Court should maintain its

ruling entrusting Customs "to determine how to ensure SKF receives

its pro rata share of the 2005 CDSOA disbursements as it deems fit,

understanding that Customs has regulatory authority at its disposal

to   redistribute   the   disbursed   funds,   such   as   19   C.F.R.   §

159.64(b)(3)."   Id. at 15 (citing to SKF USA, ___ CIT at __, 451 F.

Supp. 2d at 1366).


        B.   Analysis

             1.   Customs' Calculation Error   in   Calculating   the
                  Offset Distribution Amount Is De Minimis in Nature
                  and Thus Does Not Warrant a Remand.

        As   stated   supra,   Timken   contends   that   SKF's   "correct

allocation percentage should be 2.969865553% and the distribution

[SKF]   would   potentially   receive   from   the   total   available,

$47,810,802.17, would be up to $1,419,916.54."   Timken's Comm. at

3.    The   Government   has   confirmed   that   "Customs'   remand
determination contains a ministerial error in the calculation of
the CDSOA distribution SKF would be entitled to receive pursuant to
[SKF USA]."  Customs' Reb. at 3.  The Government further requests
that "the Court grant a remand to Customs for the limited purpose
of correcting a ministerial error in its calculation of the CDSOA
distribution SKF will be entitled to pursuant to [SKF USA.]"  Id.
at 4.

     The remand, however, if granted, would lead to an adjustment
of  a  mere  $16.47.   Despite  the  Government's  admission  of  an
administrative error on the part of Customs, this Court finds that
the  error  was  de minimis  in  nature  and  that  a  remand  would  be  a
waste of time, effort, and taxpayers' funds.


              **2.    Customs' and the ITC's Remand Determinations Fully
                     Comply with SKF USA.**

     In  an  APA  action,  such  as  the  case  at  bar,  courts  "shall
compel agency action" which is "unlawfully withheld or unreasonably
delayed."  5 U.S.C. § 706(1)(2000).   "[A]gency action includes the
whole or part of an agency rule, order, license, sanction, relief,
or the equivalent or denial thereof, or failure to act."  5 U.S.C.
551(13)(2000).  This Court only possesses jurisdiction to entertain
challenges to administrative actions.  See 28 U.S.C. 1581(i)(2000).
In SKF USA, this Court remanded the present matter "to the ITC and

Customs   to   review   their   decisions   denying   SKF   CDSOA
disbursements[.]"   <u>SKF USA</u>, __ CIT at __, 451 F. Supp. 2d at 1367.

In <u>SKF USA</u>, SKF requested that this Court "issue a permanent
injunction enjoining the Government from making any present or
future disbursements pursuant to the CDSOA with respect to duties
collected from all antidumping orders covering AFBs[5], or in the
alternative, just ball bearings <u>from Japan</u>." <u>SKF USA</u>, __ CIT at
__, 451 F. Supp. 2d at 1363 (emphasis added). As such, SKF further
requested that this Court "order Customs to require repayment of
all CDSOA funds disbursed with respect to all antidumping orders
covering AFBs, or in the alternative, just ball bearings <u>from
Japan</u>[.]" <u>Id.</u> (emphasis added).

Furthermore, in a letter dated July 13, 2005, SKF's attorneys
requested that Customs distribute CDSOA offsets for Fiscal Year
2005 for offsets "resulting from the antidumping order on ball
bearings from Japan." Letter to the Assistant Commissioner of
Customs (July 13, 2005). SKF's Counsel therein attached a
Continued Dumping and Subsidy Offset Certification, which clearly
listed the case name as "Ball Bearings from Japan." <u>Id.</u> SKF's
Complaint of October 3, 2005 makes specific references to

---

[5]      AFBs are defined as "antifriction bearings, other than
tapered roller bearings and parts thereof" in <u>SKF USA</u>, __ CIT at
__, 451 F. Supp. 2d at 1357.

disbursements "pursuant to the CDSOA of assessed fiscal year 2005 funds pertaining to ball bearings from Japan." Complaint at p. 16. SKF additionally raises its "request for disbursement of funds and Customs' disbursement of funds collected under the antidumping order on ball bearings from Japan before December 1, 2005[.]" Complaint ¶ 15. These assertions were later put forth in SKF's amended complaint of January 3, 2006, where SKF states that it challenges the actions of both the ITC and Customs, pursuant to 19 U.S.C. 1675c, "in connection with the disbursements of funds collected under an antidumping order on ball bearings from Japan." Amended Complaint, ¶ 7. It is thereby clear to this Court that SKF was initially seeking repayment of all CDSOA funds disbursed with respect to all antidumping orders covering AFBs, or in the alternative, just ball bearings from Japan, and only from Japan.

As a result of this Court's decision in SKF USA, both the ITC and Customs filed their remand determinations. See Customs' Reconsideration; ITC Remand Determination. As SKF only challenged the ITC's decision not to add SKF to the list of affected domestic producers list with respect to the ball bearings from Japan antidumping investigation, the ITC did not take any administrative action with respect to other antidumping or countervailing duty orders. See ITC Remand Determination. As such, Customs' remand determination dealt solely with the antidumping duty order on ball

bearings from Japan as well.  <u>See</u> <u>Customs' Reconsideration</u>.  By solely referencing the antidumping duty order on ball bearings from Japan both the ITC and Customs complied with this Court's decision in <u>SKF USA</u>.

As stated <u>supra</u>, under 28 U.S.C. § 1581(i) this Court only possesses jurisdiction to entertain challenges to administrative actions.  This Court remanded "this matter to the ITC and Customs to review <u>their decision</u> denying SKF CDSOA disbursements in accordance with" the <u>SKF USA</u> opinion.  <u>SKF USA</u>, __ CIT at __, 451 F. Supp. 2d at 1367 (emphasis added).  Both the ITC and Customs properly kept their remands within the scope of "the antidumping order on ball bearings from Japan."  Letter to the Assistant Commissioner of Customs (July 13, 2005).  Furthermore, this Court has stated that it "entrusts Customs to determine how to ensure SKF receives its pro rata share of the 2005 CDSOA disbursements as it deems fit[.]"  <u>SKF USA</u>, __ CIT at __, 451 F. Supp. 2d at 1366. Nothing in Customs' remand determination makes the Court regret such a lawful entrustment.  <u>See</u> <u>SKF USA</u>, __ CIT at __, 451 F. Supp. 2d at 1366 (citing to 19 C.F.R. § 159.64(b)(3)).

>        3.   **Customs Did Not Err in Refusing to Consider SKF's filings of September 28, 2006.**

As stated _supra_, SKF claims that Customs erred in refusing to consider an amended filing made on September 28, 2006 for disbursements under the antidumping order against ball bearing from Japan, which also included certifications for seven other countries.  Pl.'s Comm. at 6.

Pursuant to statute, Customs must publish a notice of intent to distribute ("Notice of Intent to Distribute") at least 30 days before making CDSOA distributions.  <u>See</u> 19 U.S.C. § 1675c(d)(2)(2000).  After publication of the Notice of Intent to Distribute, Customs' regulations state that claimants, such as SKF, have 60 days in which to file certification to obtain a CDSOA distribution.  See 19 C.F.R. § 159.63(a).  The timely filing of certifications is important as the "distribution of funds from duties assessed each fiscal year must be distributed not later than 60 days after the end of that fiscal year."  <u>Cathedral Candle Co. V. United States International Trade Comm'n</u>, 400 F.3d 1352, 1358 (quoting 19 U.S.C. § 1675c(c)).

As per the above analysis, CDSOA certifications in the case at bar were due to be filed within 60 days of Customs' July 3, 2005 publication of <u>Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers</u>, 67 Fed. Reg. 44,722.  As September

**Court No.  05-00542**                                    **Page  19**

28, 2006 is more than 60 days after July 3, 2005, SKF failed to timely file its amended certification, and Customs thereby did not err in its refusal to consider said documentation.


**C.   Conclusion**

Upon review of the record and the arguments presented by the parties on remand, the <u>Remand Determinations</u> are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

                              /s/ Nicholas Tsoucalas
                              NICHOLAS TSOUCALAS
                              SENIOR JUDGE


Dated:     July 26, 2007
           New York, New York

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

```
————————————————————————————————————  :
                                       :
SKF USA INC.,                          :
                                       :
         Plaintiff,                    :
                                       :
         v.                            :
                                       :
UNITED STATES OF AMERICA,              :
UNITED STATES CUSTOMS AND BORDER       :
PROTECTION, ROBERT C. BONNER           :
(COMMISSIONER, UNITED STATES CUSTOMS   :    Court No. 05-00542
AND BORDER PROTECTION), UNITED STATES  :
INTERNATIONAL TRADE COMMISSION, and    :
STEPHEN KOPLAN (CHAIRMAN, UNITED       :
STATES INTERNATIONAL TRADE COMMISSION),:
                                       :
         Defendants,                   :
                                       :
         and                           :
                                       :
TIMKEN US CORPORATION,                 :
                                       :
         Defendant-Intervenor.         :
————————————————————————————————————  :
```

**JUDGMENT**

    This Court, having received and reviewed the Bureau of Customs and Border Protection's ("Customs") <u>Reconsideration of the Fiscal Year 2005 CDSOA Certification of SKF USA, Inc.</u> ("Customs' Reconsideration") filed on December 8, 2006, the remand determination filed by the United States International Trade Commission ("ITC") on December 11, 2006 ("<u>ITC Remand Determination</u>")(<u>Customs' Reconsideration</u> and the <u>ITC Remand Determination</u>, collectively, the "<u>Remand Determinations</u>"), comments and rebuttal comments of SKF USA Inc., Timken US Corporation, Customs and the ITC, and all other papers filed herein, holds that both Customs and the ITC duly complied with this Court's remand order in <u>SKF USA Inc. v. United States</u>, ___ CIT ___, 451 F. Supp. 2d 1355 (2006), and it is hereby

**ORDERED** that the <u>Remand Determinations</u> are affirmed in their entirety; and it is further

**ORDERED** that since all other issues have been decided, this case is dismissed.

<u>        /s/ Nicholas Tsoucalas        </u>
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated:    July 26, 2007
          New York, New York

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____          By: _____
                                                   Deputy Clerk